UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| WILLIAM PARRISH, Individually and On Behalf of Others Similarly Situated, | Case No.: 5:16-cv-00417-DAE |
|---|---|
| | Collective Action |
| v. | Judge David A. Ezra |
| PREMIER DIRECTIONAL DRILLING, L.P. | Magistrate John W. Primomo |

**PARRISH'S REPLY IN SUPPORT OF HIS OBJECTIONS TO, AND MOTION TO STRIKE, PREMIER'S IMPROPER AFFIDAVIT TESTIMONY**

**A.   SUMMARY**

Premier cannot cure the improper declaration testimony of Premier CFO Thomas Schmidt and Vice President Ward Geoffroy. The conclusory and contradictory statements offered by each witness should be stricken.

**B.   ARGUMENT & AUTHORITIES**

   **1.   Premier's reading of the sham affidavit doctrine is too narrow.**

According to Premier, a witness can introduce affidavit testimony that contradicts any other evidence in the case, so long as it doesn't contradict that witness's own, earlier testimony. *See* Doc. 181.

That is not the case. A party moving or defending summary judgment cannot artificially create an issue of material fact (or the absence of one) by submitting a declaration contradicting the clear evidence obtained in discovery. *E.g.*, *Price v. Worldvision Enterps., Inc.*, 455 F.Supp. 252, 260 (S.D.N.Y. 1978); *Rainey v. Am Forest and Paper Ass'n, Inc.*, 26 F.Supp.2d 82, 95 (D.D.C. 1998). For example, one employee cannot contradict the testimony of another employee with authority to speak for the corporation. *See also Caraustar Indus., Inc. v. N. Georgia Converting, Inc.*, No. 3:04-cv-187-H, 2006 WL 3751453, at *7 (W.D.N.C. Dec. 19, 2006) (striking declaration from corporate employee that differed from the testimony of the company's Rule 30(b)(6) witness). Despite Premier's wishes, this is in fact,

the state of the law. *See* Doc. 181, at *7 & n.2.[1]

Premier had its opportunity to expand on any testimony of Schmidt and Geoffroy at the time of their depositions. Premier choose not to. Schmidt and Geoffroy also had the opportunity to correct any misstatements in the errata sheets to their depositions. They choose not to. Premier cannot now, solely to defeat or advance summary judgment, manufacture new testimony, especially when it contradicts the testimony Premier, as a corporation, already proffered.

**2. Reply regarding improper testimony.**

**2.1. Schmidt's testimony regarding Alfaro and Robbins.**

Because Schmidt himself said he would be speculating regarding the separation of Alfaro, Premier argues that Schmidt should now be able to do so.

Schmidt's testimony is clear that he did not know the reason for Alfaro's swap to contract status. Ex. E, Schmidt depo 2, at 64:19-67:10. Yet the testimony that Premier quotes at length in its response is crystal clear that Alfaro and Robbins were swapped to contract pay against their will. Doc. 181-2, Alfaro depo, at 166:2-5, 167:24-168:10; Doc. 181-3, Robbins depo, at 162:17-20.

Schmidt had the opportunity to weigh in on Alfaro's separation at his deposition. He said he could not because "it would be speculation." Ex. E, Schmidt depo 2, at 67:10. For him to now admittedly speculate on Alfaro and contradict the evidence and testimony regarding Robbins—without explanation—should not be permitted.

**2.2. Schmidt's testimony regarding negotiations.**

Premier offers no good explanation for how Schmidt is now able to offer testimony regarding

---

[1] Premier cites to *Wojciechowski v. National Oilwell Varco, L.P.* for the claim that "the sham affidavit doctrine does not compare the declarant's statements to that of other witnesses." 763 F.Supp.2d 832, 846 (S.D. Tex. 2011). But nowhere in *Wojciechowski* is the sham affidavit doctrine even discussed. *See generally id.* If anything, however, *Wojciechowski* supports Parrish's position. The court there struck the plaintiff's affidavit, finding that it was conclusory; it contravened earlier, contradictory deposition testimony; and it failed to set forth personal knowledge of the matters at issue. *Id.* at 846-47.

independent contractor negotiations after saying at his depositions that he would be speculating and referring Parrish's Counsel to the operations department. Ex. D, Schmidt depo 1, at 126:22-127:25; Ex. E, Schmidt depo 2, at 75:14-79:12.

Inexplicably, Schmidt is now able to testify regarding the details of Premier's independent contractor negotiations. Doc. 158-10, at ¶ 6. Schmidt avoided testimony on these issues during his depositions. Now, after having avoided cross-examination, he offers self-serving testimony on independent contractor negotiations. These self-serving statements should be stricken.

### 2.3. Schmidt's testimony regarding supervision and oversight.

Premier tries to explain away Schmidt's self-serving and contradictory statements regarding Premier's supervision and oversight of its "independent contractor" DDs by creating a distinction between types of supervision that is found nowhere in caselaw between work performed by the DD for Premier on the rig and other work for Premier.

The caselaw evaluating the employer/employee relationship with does not draw Premier's artificial distinction between work on a rig and work performed for compliance for legal purposes. *Mancia v. Twin Stone Designs & Installations, Inc.*, No. 15-23376-CIV-MORENO, 2016 WL 899313, at *5 (S.D. Fla. Mar. 2, 2016) (finding OSHA training consistent with employee status); *Johnson v. VCG Holding Corp.*, 845 F.Supp.2d 353, 360 (D. Me. 2012) (finding sexual harassment training consistent with employee status); *Reyes v. Remington Hybrid Seed Co.*, 495 F.3d 403, 408 (7th Cir. 2007), *as amended* (Aug. 30, 2007) (finding pesticide safety briefing consistent with employee status). Nor with customer instructions. Instructions provided by an employer's customers that the worker is required to follow are treated just like instructions from the employer itself. *See*, *e.g.*, *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 307 (4th Cir. 2006); *Robles v. RFJD Holding Co., Inc.*, No. 11-62069-CIV, 2013 WL 2422625, at *4 (S.D. Fla. Jun. 3, 2013).

Schmidt's conclusory statement is proffered solely to avoid/support summary judgment. It

contradicts his earlier testimony and the discovery evidence. It should be disregarded.

### 2.4. Geoffroy's testimony on Premier's policies and procedures.

Premier attempts to squirm out of Geoffroy's policy and procedure testimony on similar grounds. But Geoffroy already testified that Premier employee and IC DDs had to follow the exact same policies and procedures. Geoffroy testified that Premier IC (and employee) DDs had to follow, for example, quality control, drug and alcohol, and paperwork policies. Ex. A, Geoffroy depo, at 53:3-54:22, 61:1-20.

Geoffroy himself testified employee and IC DDs were different in name only:

> Q. And the only difference between an independent contractor directional driller and an employee directional driller, according to Premier, is their ability to turn down work; isn't that correct?
> **A. And negotiate their pay.**
> Q. Okay. And those are the only two differences, correct? Excuse me?
> **A Yes.**[2]

There's no getting around it. Geoffroy's sham deposition testimony directly contradicts his deposition testimony and should be stricken.

### 2.5. Schmidt's testimony regarding Premier's profits and losses.

Premier's only defense to Schmidt's conclusory statement that "Premier's profits and losses depend, in large part, on the compensation it must pay to the workers who staff its clients' projects," is that Schmidt has knowledge of Premier's profits and losses by virtue of his position as Premier's CFO. Doc. 181, at *3.

Schmidt may well be the CFO. And he may well have knowledge of Premier's profits and losses. But that does not entitle him to make—without explanation—conclusory, self-serving statements to advance or defend summary judgment.

The revenues and expenditures of a business, and their role in a business's profits and loss are

---

[2] Ex. 48-A, Geoffroy, at 95:7-95:15.

complex and involve any variety of factors. Schmidt addresses none of those in making his self-serving, conclusory statement regarding the role of Premier's employee costs in its profits and losses. This is particularly true in an environment such as the oilfield, where profit and loss is driven, at least in part, on an international commodity exchange and global politics. On a less global scale, profit and loss also depends on the geographic location for work, cost for equipment purchase and rental, and interruptions in production, such as for weather (as demonstrated by the recent oilfield shutdown in Texas in the wake of Hurricane Harvey, see Krauss, N.Y. TIMES, *Texas Energy Industry Recovering From Hurricane's Disruption* (Sept. 8, 2017) (available at https://www.nytimes.com/2017/09/08/business/energy-environment/texas-energy-industry.html)). Without more, this conclusory statement is not helpful to the Court and should be disregarded.

### 2.6. Schmidt's testimony regarding IC DD's other employers.

Schmidt (and Premier) know that IC DDs are not allowed to work for other employers. Schmidt didn't know of a single incidence of this occurring. Ex. E, Schmidt depo 2, at 91:3-14. Nor did supervisor Casin Oliver. Ex. C, Oliver depo, at 67:1-16.

And the Consultant Agreement does indeed prohibit IC DDs from working from other employers. Although the agreement is between the DD and Directional Personnel, Directional Personnel had its own staffing agreement with Premier. And the agreements that the IC DDs signed with Directional Personnel made them surrender any ability to market themselves and appoint Directional Personnel as their exclusive "Marketing Agent," which in turn made Premier the only company for which they were allowed to work. Doc. 149-2, C.A., at ¶ 6. Knowing this, Schmidt still made the sham statement in his declaration that the IC DDs were free to work for other employers. This statement should be stricken.

## C. CONCLUSION

Schmidt and Geoffroy's testimony is improper summary judgment evidence.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____
Richard J. (Rex) Burch
Texas Bar No. 24001807
Matthew S. Parmet
Texas Bar No. 24069719
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Ste. 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Attorneys for Plaintiff**

### CERTIFICATE OF SERVICE

On September 11, 2017, I served a copy of this document on all registered parties and/or their counsel of record, via the Court's CM/ECF system.

*/s/ Matthew S. Parmet*
_____
Matthew S. Parmet